*1086 OPINION OF THE COURT
Stanley L. Sklar, J.
Defendants Sadek K. Hilal, M.D., Ralph L. Sacco, M.D., Jay P. Mohr, M.D. and Presbyterian Hospital (the hospital) by their present counsel Aaronson, Rappaport, Feinstein & Deutsch move for an order disqualifying plaintiffs counsel, A. Paul Bogaty, whose practice consists mainly of prosecuting medical malpractice actions, from representing the interests of plaintiff Robert Gellman pursuant to Code of Professional Responsibility Canons 4, 5 and 9.
Defendants allege through their attorney that Bogaty’s wife, Joan P. Brody, Esq., who practices almost exclusively in the area of medical malpractice defense work, as a former partner at the law firm of Kanterman, Taub & Breitner, P. C. (Kanterman), former counsel to Hilal and the hospital, represented these defendants in an unrelated malpractice action and through that representation met and interviewed the defendants and thus became privy to confidences "concerning all aspects of defenses which will surely apply to the instant case.”
Defendants’ counsel further contends that because the prior case on which Brody worked involved medical malpractice in performing a neuroradiological procedure known as cerebral embolization, that the prior lawsuit is "substantially similar” to the instant action which also involves cerebral embolization, thus giving Brody knowledge of "confidences and defenses” particularly germane to the instant suit. Defense counsel asserts that "[sjince Ms. Brody, through her former representation of defendants, is fully versed in all the legal and medical aspects of the claims and defenses, defendants’ apprehension and uncertainty as to the integrity of their confidences is apparent.”
Defendants argue that if Brody divulges her knowledge to Bogaty, defendants will be prejudiced; moreover, as Bogaty’s wife, Brody has a financial incentive to aid Bogaty in the prosecution of the instant suit since any contingent fee he earns would likely benefit the Brody-Bogaty marital household. Defendants also allege a danger of inadvertent disclosure in the ordinary course of spousal intimacy of daily life in a shared household.
DISCUSSION
The most relevant disciplinary rule addressing the propriety of attorney-spouses representing opponents is Code of Profes *1087 sional Responsibility DR 9-101 (D) (22 NYCRR 1200.45 [d]): "A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent in any matter a client whose interests differ from those of another party to the matter who the lawyer knows is represented by the other lawyer unless the client consents to the representation after full disclosure and the lawyer concludes that the lawyer can adequately represent the interests of the client.”
In the present case, which was commenced on November 3, 1992, it appears that on the very day after there were telephone calls among Bogaty, Kanterman and the hospital regarding the perceived conflict. The conversations were evidently instigated by the hospital which learned of the relationship between Kanterman’s then partner, Brody, and Bogaty, from another action commenced against the hospital by Bogaty. In that other case the problem was resolved when the hospital reassigned the case to another firm. Following the telephone calls in the instant case the defense was reassigned to Rochman, Platzer, Fallick, Rosmarin & Sternheim (Rochman) which interposed an answer in December 1992. There is no claim by defendants that prior to the reassignment of the case the Kanterman firm came across any confidential or strategical information. In addition, it is undisputed that Brody had never had any involvement in the case. The defense of this action was thereafter reassigned from Rochman to present counsel, who made the instant motion about seven months after defendants became aware of the alleged conflict.
Disclosure was made to plaintiff Gellman of the relevant facts and he made a knowing choice to retain his attorney, who was handling the case at the request of Gellman’s father, an attorney who has a long-standing business relationship with Bogaty.
The court must balance plaintiff’s interests in counsel of his own personal choice with defendants’ "right to be free of apprehension that its interests will be prejudiced” by Brody’s former association with defendants’ former law firm. (Lopez v Precision Papers, 99 AD2d 507, citing Cardinale v Golinello, 43 NY2d 288, 295.) In addition, an attorney must guard against not only the fact but also the appearance of impropriety (supra; accord, People v Shinkle, 51 NY2d 417, 421; Cardinale v Golinello, supra, at 296); however, an appearance of impropriety without more, has been considered " 'too slen *1088 der a reed on which to rest a disqualification order’.” (Lopez v Precision Papers, supra, at 507, quoting Board of Educ. v Nyquist, 590 F2d 1241, 1247.)
DR 5-108 (A) (1) (22 NYCRR 1200.27 [a] [1]) bars an attorney from representing a client in a matter that is the same as or is substantially related to a matter in which the attorney represented a former client where the new client’s interests are materially adverse to those of the former client, except upon consent of the former client after full disclosure. In the present case, although Brody has in the past represented Hilal and the hospital, she has not represented them in this action. From the available record there is no evidence that any confidences she may have obtained in the prior case are at all relevant to the instant case, nor are the actions substantially related. That Brody represented defendants in a separate, prior suit involving the medical procedure at issue here is insufficient to create a factual predicate justifying disqualification under DR 5-108.
Although the two actions involve a claim of malpractice in the performance of the same procedure, the nature of the plaintiffs’ claims differs greatly. The plaintiff in the prior action alleged that the procedure was improperly performed because the catheter broke and remained imbedded in her skull thereby making it "medically unfeasible to remove the embolism” and thus injuring plaintiff. No such claim is involved in this case. In any event, the mere fact that an attorney has knowledge of the "claims and defenses” in one action against a party cannot serve as a basis for disqualification in another action involving the performance of the same procedure on a different person. If that were the case then the plaintiff’s attorney in the prior action commenced against Dr. Hilal and the hospital, who certainly would gain knowledge of the claims and of Dr. Hilal’s defenses based on Dr. Hilal’s deposition, his expert’s report and ultimately the defense case at trial, would never be allowed thereafter to represent another plaintiff in another case against Dr. Hilal involving the same procedure. Moreover, Brody herself is not involved in representing plaintiff.
In the context of attorney-spouses working for opposing law firms, plaintiff has asserted and defendants have conceded that there is no per se rule of disqualification based on marital status. (See, 1975 Opns Am Bar Assn No. 340; Blumenfeld v Borenstein, 247 Ga 406, 276 SE2d 607.) The ABA Standing Committee on Ethics and Professional Responsibility reasoned *1089 that: "[a] lawyer whose husband or wife is also a lawyer must, like every other lawyer, obey all disciplinary rules, for the disciplinary rules apply to all lawyers without distinction to marital status. We cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client’s confidences, that proscribe neglect of a client’s interest, and that forbid representation of differing interests.” (1975 Opns Am Bar Assn No. 340.) Thus, while Brody might have a financial incentive in seeing her husband bring home a contingency fee by winning his client’s lawsuit, to act on that incentive by divulging to him confidences she may have gained from the defendants would violate serious ethical and statutory rules against such conduct, and could injure her reputation and her interest in her license and impede her ability to advance her career.
The ABA also noted that: "the relationship of husband and wife is so close that the possibility of an inadvertent breach of a confidence or the unavoidable receipt of information concerning the client by the spouse other than the one who represents the client (for example, information contained in a telephoned message left for the lawyer at home) is substantial.” (Id.) However, the danger of inadvertent revelation of confidences was not considered fatal; rather, attorney-spouses were cautioned to adhere carefully to ethical guidelines set forth in the Canons, Ethical Considerations, and Disciplinary Rules. In the present case Bogaty asserts that neither he nor Brody maintains an office at home, that their files are not available to each other and that, as lawyers who have made careers working on opposite sides of medical malpractice litigation, they have spent their shared personal lives together without endangering professional confidences. Indeed, Bogaty claims that prior to the commencement of this action he was unaware that his wife had ever represented Hilal.
Defendants, who rely solely on the hearsay vague and conclusory affidavits of their counsel, have not alleged facts sufficient for the court to infer that Brody is privy to confidences or other strategic information that, if revealed, might injure defendants in the instant action or, that even if she had such knowledge, she has or will improperly divulge it to defendants’ detriment.
Accordingly, defendants’ motion for an order disqualifying plaintiff’s attorney is denied.